IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RG Aviation LLC, | § | Case No. 24-14201-PMM |
| | § | |
| Debtor. | § | Hearing Date: April 29, 2025, at 11:00 a.m. |
| | § | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S
SECOND MOFIDIED SUBCHAPTER V PLAN OF REORGANIZATION**

Andrew R. Vara, the United States Trustee for Regions 3 & 9 ("U.S. Trustee"), by and through his undersigned counsel, hereby objects (this "Objection") to confirmation of the Second Modified Plan of Reorganization (ECF No. 59) (the "Second Modified Plan" or "Plan") filed by RG Aviation LLC (the "Debtor"). In support of this Objection, the U.S. Trustee states as follows:

**JURISDICTION**

1. This Court has jurisdiction to hear and determine this Objection.

2. The U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. See In re United Artists Theatre Co., 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention

1

of that responsibility."); Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

3. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

4. Under § 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the U.S. Trustee has standing to be heard on the issues presented by the Debtor's Plan.

## BACKGROUND

### *Debtor's Chapter 11 Case*

5. On November 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of title 11 of the Bankruptcy Code. ECF No. 1.

6. Upon information and belief, since the Petition Date, the Debtor has remained in possession of its property and management of its affairs pursuant to § 1184 of the Bankruptcy Code.

7. On November 25, 2024, the U.S. Trustee appointed Holly Smith Miller as the Subchapter V trustee in this case. See ECF No. 16.

8. The Debtor's Schedule A/B includes an airplane with a scheduled value of $2,325,606.00. See ECF No. 26. This is the only asset on the Schedule A/B. Id.

9. The Debtor's Schedule D discloses one secured creditor, Legacy Bank & Trust Company ("Legacy Bank" or "Secured Creditor"), with a claim in the amount of $1,625,000.00. See ECF No. 27.

10. The Debtor's Schedule E/F shows that the Debtor has no unsecured creditors. See ECF No. 28.

11. The Debtor's Schedule G shows that it has no executory contracts and unexpired leases. See ECF No. 29.

12. To date, the Debtor has filed four monthly operating reports ("MORs") since the Petition Date, for December 2024 through and including March 2025. See ECF Nos. 49, 52, 55, and 60. Each of the MORs shows that the Debtor has not operated during the pendency of this case as it has no cash receipts or disbursements and no cash on hand. ECF Nos. 49, 52, 55, and 60.

13. Upon information and belief, the Debtor did not have any pre-petition bank accounts and has not opened a debtor-in-possession account at an approved depository.

*Claims Register*

14. On January 13, 2025, the Court entered an order setting February 13, 2025, as the general bar date (the "Bar Date"). ECF No. 46.

15. To date, the Claims Register contains one timely-filed secured claim filed by creditor Legacy Bank. See Claims Register, Claim No. 1. The amount of the Legacy Bank Claim is $1,527,618.80.

*Debtor's Chapter 11 Plan*

16. On February 18, 2025, the debtor filed a proposed Plan. See ECF No. 50. The Plan indicated that the Debtor "had not been able to get final [Federal Aviation Administration ("FAA")] approval to fly, however they now have a contract with a management company and should be able to begin to generate revenue by February 23, 2025." ECF No. 50 at 1. The Plan then discusses a restructuring of the secured debt owed the Legacy Bank from a 15-year

3

amortization to a 20-year amortization and a 7-year balloon payment. Id. The Plan attaches a Liquidation Analysis as Exhibit A, and financial projections as Exhibit B, which purport to show that if the Debtor charters 450 hours per year, its projected monthly disposable income would be $16,000 per month. Id. at 1-2, 7-8 (Exhibit A), 9-10 (Exhibit B).

17. On February 19, 2025, the Court entered an order scheduling the confirmation hearing for April 29, 2025, at 11:00 a.m. and setting related deadlines. See ECF No. 51.

18. On April 17, 2025, the debtor filed a Modified Plan. See ECF No. 58. The Modified Plan addresses some issues the U.S. Trustee raised with Debtor's Counsel via email on March 28, 2025. Some of the amendments clarified who would file the financial reports required under L.B.R. 3021-1 and subchapter V trustee remedies in the event of confirmation under §1191(b).

19. On April 21, 2025, the U.S. Trustee followed up on some of the issues from the March 28 email and requested further information regarding the Modified Plan, including copies of the FAA approvals and contract with a management company referenced therein.

20. On April 21, 2025, the Debtor filed the Second Modified Plan. See ECF No. 59. The Second Modified Plan includes provisions requested by Legacy Bank related to its loan modification agreement with the Debtor.

21. On April 22, 2025, the U.S. Trustee and Debtor's Counsel discussed the classification of administrative claims. Debtor's Counsel informed the U.S. Trustee that at an earlier status conference in the case, the Court ordered him and the subchapter V trustee to vote on the Plan as "administrative creditors." Upon information and belief, Debtor's Counsel intends to submit a ballot voting to confirm the Second Modified Plan; Legacy Bank voted to confirm

4

the Second Modified Plan; the subchapter V trustee supports the Second Modified Plan and will submit a ballot if the Court requires it.

22. On April 22, 2025, Debtor's Counsel provided the U.S. Trustee with the FAA approval signed by an FAA official on March 14, 2025, and a copy of the management contract between the Debtor and All In Jets, LLC. A copy of the management contract is attached to this Objection as Exhibit A. The effective date of the management contract is October 25, 2022, and it is not countersigned by the principal of All in Jets, LLC. See Exhibit A at 14. Further, the management contract provides that the initial term of the agreement is the last day of the twelfth calendar month from the effective date, and the term shall be automatically renewed for 12-month periods thereafter unless either party gives notice of termination. Id. at 11.

## OBJECTION

23. The U.S. Trustee objects to confirmation of the Plan because the Debtor cannot carry its burden of demonstrating that the Plan complies with the applicable provisions for confirmation of a Subchapter V bankruptcy plan. In re Walker, 628 B.R. 9, 18 (Bankr. E.D. Pa. 2021) ("To obtain confirmation of the Plan under chapter 11 of the Bankruptcy Code, the Debtor has the burden of proving that the plan satisfies all the confirmation requirements of the Bankruptcy Code.").

24. Although a separate disclosure statement is not required in Subchapter V cases, the bankruptcy plan must contain information that is typically included in the disclosure statement. Specifically, Bankruptcy Code § 1190 provides, in part, that "[a] plan filed under this subchapter – (1) *shall include* – (A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization[.]" 11 U.S.C. § 1190(1) (emphasis added).

5

**A. The Plan Fails to Provide Sufficient Contents.**

25. Confirmation of a chapter 11 plan requires the Debtor satisfy all requirements of § 1129(a). See In re Chadda, 2007 WL 3407375 *4 (Bankr. E.D. Pa. Nov. 9, 2007); see also Matter of Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000). Even where there are no objections to a plan, a court must find that the debtor fulfilled the requirements of § 1129(a). In re Friese, 103 B.R. 90, 91 (Bankr. S.D.N.Y. 1989). The plan proponent "bears the burdens of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied." In re Smith, 357 B.R. 60, 66 (Bankr. M.D.N.C. 2006) (quoting 7 Collier on Bankruptcy ¶ 1129.02 [4] (15th ed. rev. 2006)).

26. Confirmation of a subchapter V plan is governed by a combination of certain subsections of §§ 1129 and 1191. Section 1191(a) provides that:

> The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met.

See 11 U.S.C. § 1191(a).[1]

27. When compared against these requirements, the Plan fails to provide sufficient contents, and with that confirmation must be denied.

    **1. The Plan Misclassifies Administrative Claims and may Improperly Require Voting from Administrative Claimants.**

28. Under 11 U.S.C. § 1123(a)(1), the Debtor must designate classes of claims, other than claims listed in §§ 507(a)(2), 507(a)(3), or 507(a)(8), and classes of interests. Under § 1123(a)(2), (3), (4), the Debtor must indicate whether the classes are unimpaired or impaired, treatment thereof and the source of funds used to pay claims.

---

[1] Also, §§ 1129(b), 1129(c), and 1129(e) do not apply under subchapter V. See 11 U.S.C. § 1181(a).

6

29.     The Second Modified Plan currently classifies administrative claims, which consists of attorney's fees in the amount of $10,000 total for both Debtor's Counsel and the subchapter V trustee, as impaired class 1. This classification is at odds with the carve out for administrative claims in § 1123(a)(1).

30.     Upon information and belief, both Debtor's Counsel and the subchapter V trustee have agreed to accept $2,000 monthly payment of their fees over a five-month period beginning 30 days after confirmation. The Second Modified Plan does not expressly state that both Debtor's Counsel and the subchapter V trustee have accepted this arrangement, but both attorneys represented the same through discussions or emails. While the administrative claimants have accepted alternate treatment in accordance with the full payment requirement in § 1129(a)(9), they are not entitled to vote for or against the Second Modified Plan, as Debtor's Counsel stated on April 22, 2025. See Ellis v. Westinghouse Elec. Co., LLC, 11 F.4th 221, 238 (3rd Cir. 2021) (recognizing that administrative expense claims are usually considered unimpaired and not entitled to vote on the plan); see also 11 U.S.C. § 1126(f); In re Combustion Eng'g, Inc., 391 F.3d 190, 220–21 (3d Cir. 2004).

### 2. The Plan Does Not Appear to be Feasible.

31.     Under § 1129(a)(11), a debtor must demonstrate the plan is feasible. See generally 11 U.S.C. § 1129(a)(11). The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is by a preponderance of the evidence. In re Rubicon US REIT, Inc., 434 B.R. 168, 174 (Bankr. D. Del. 2010); In re Trans Max Tech., Inc., 349 B.R. 80, 92 (Bankr. D. Nev. 2006). The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding. Greate Bay Hotel & Casino, Inc., 251 B.R. at 226. The debtor has to establish concrete evidence of sufficient cash flow to fund and maintain both its operations and obligations

under a proposed plan. Trans Max Tech., Inc., 349 B.R. at 92. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. Greate Bay Hotel & Casino, Inc., 251 B.R. at 226; see also In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985); In re Sovereign Oil Co., 128 B.R. 585, 586 (Bankr. M.D. Fla. 1991).

32. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possibly attain after confirmation.'" In re Sound Radio, Inc., 103 B.R. 521, 522 (D.N.J. 1989), aff'd sub nom. Appeal of Robinson, 908 F.2d 964 (3d Cir. 1990) (citation omitted).

33. In considering whether a particular plan is feasible, courts have considered the following factors: (i) the adequacy of the debtor's capital structure; (ii) the earning power of its business; (iii) economic conditions; (iv) the ability of the debtor's management; (v) the probability of the continuation of the same management; and (vi) any related matters which determine the prospects of a sufficiently successful operation to enable performance of the provision of the plan. See Greate Bay Hotel & Casino, Inc., 251 B.R. at 226-227 (citing In re Temple Zion, 125 B.R. 910, 915 (Bankr. E.D. Pa. 1991); In re Landmark at Plaza Park, Ltd., 7 B.R. 653, 659 (Bankr. D.N.J. 1980).

34. The facts and circumstances of this case demonstrate that the Plan is not feasible and, as a result, cannot be confirmed pursuant to 11 U.S.C. § 1129(a)(11). The Debtor has failed to provide any support for its ability to fund a feasible Plan.

35. The funding for the Plan is entirely speculative at this point. The financial projections included in the Debtor's Exhibit B to the Second Modified Plan assume that the Debtor will charter 450 flights per year, or 37.5 flights per month. The Second Modified Plan

incorrectly states that the Debtor would begin to generate revenue by February 23, 2025. As of the date of this filing, the Debtor has failed to generate any revenue, as demonstrated by the December 2024 through March 2025 MORs. See ECF Nos. 49, 52, 55, and 60. Debtor's Counsel informed the U.S. Trustee that the Debtor expects to generate revenue in the next 20 days, but the Debtor has not furnished proof that any flights have been booked that will generate sufficient income to fund the Second Modified Plan. Additionally, the management contract the Debtor is relying on to generate income is not signed by the purported operator, and the agreement is about two-and-a-half years old at this point, so it is not certain that it is still in effect, if it ever was. See Exhibit A. The Debtor should be required to further amend or supplement its Plan to include a fully executed management contract or an addendum indicating that the agreement is current and/or in effect.

36. Each MOR filed since the inception of this case reflects that the Debtor is not operating and has not generated any revenue sufficient to fund the Second Modified Plan. There is no evidence that the Debtor has sufficient cash on hand to make up for any shortfall. The first plan payment of $2,000 is due one month after confirmation, and if the plan is confirmed on April 29, 2025, it is not certain that the Debtor will be able to pay administrative claimants.

37. Upon information and belief, the subchapter V trustee has agreed to allow the debtor to pay her in installments, which is risk in and of itself. To confirm a plan without any demonstration of generating any income should not be the risk borne by a subchapter V trustee as she relies on the provision of § 1129, which requires the debtor to demonstrate feasibility. The Second Modified Plan confusingly states that the subchapter V trustee has appropriate remedies, including the liquidation of non-exempt assets, but the Debtor's only asset per Schedule A/B is the plane. See ECF No. 26. While the secured creditor has its collateral to look to if the plan

9

fails, the subchapter V trustee has no meaningful recourse to obtain compensation for the time and effort expended in this matter. If debtors can confirm plans without carrying their feasibility burden and, in this case, without demonstrating any income over the course of its bankruptcy, the willingness of subchapter V trustees to accept appointments in the future or defer their compensation to confirm a plan may be jeopardized.

## CONCLUSION

38. As detailed above, the Plan cannot be confirmed because it misclassifies administrative claims and requires administrative claimants to vote, and there is no evidence in the record that the Plan is feasible.

39. The U.S. Trustee leaves the Debtor to its burden and reserves any and all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the U.S. Trustee respectfully requests that the Court deny confirmation of the Second Modified Plan and grant such other relief as the Court deems just and proper.

Dated: April 22, 2025

Respectfully submitted,

ANDREW R. VARA,
UNITED STATES TRUSTEE,
REGIONS 3 & 9

By: /s/ *Samantha S. Lieb*
Samantha S. Lieb, Trial Attorney
Office of The United States Trustee
One Newark Center, Suite 2100
Newark, NJ 07102
Phone: (973) 645-3014
Samantha.Lieb2@usdoj.gov